IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Kansas City Docket)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | }<br>}<br>} |
| Plaintiff, | }<br>} |
| vs. | } Case No. 17-20083-CM/JPO<br>} |
| **SCOTT A. TUCKER**<br>and<br>**W. BRETT CHAPIN**, | }<br>}<br>}<br>} |
| Defendants. | } |

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
**(Conspiracy)**

1. Beginning in or about September 2008, and continuing until on or about October 20, 2011, the exact dates being unknown, in the District of Kansas, the defendants,

**SCOTT A. TUCKER**
and
**W. BRETT CHAPIN**,

unlawfully, voluntarily, intentionally, and knowingly conspired and agreed together and with other individuals known and unknown to the Grand Jury, to defraud the United

1

States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of income tax.

*PARTIES, PERSONS, AND ENTITIES*

2. Defendant Scott A. Tucker was a resident of Kansas. Defendant Tucker operated AMG Services, Inc., (formerly known as CLK Management, which was formerly National Money Service, Inc.). In 2008, Defendant Tucker orchestrated a sham sale of CLK to the Miami tribe for $120,000. The sale was a sham in that Defendant Tucker continued to control CLK and the new entity AMG. Defendant Tucker owned and operated a group of payday lending businesses. After the alleged sale, although other people and entities were listed as the owners of the businesses, Defendant Tucker was the source of the funds lent to customers by the businesses and Defendant Tucker bore the risk of non-repayment of the loans. Defendant Tucker controlled the businesses' day-to-day operations, finances, lending decisions, distribution of profits, hiring and termination of employees, advertising and solicitation of customers, and banking and other third-party relationships.

3. The group of payday lending businesses owned and operated by Defendant Tucker operated under various names, such as Ameriloan (formerly known as Cash Advance), One Click Cash (formerly known as Preferred Cash Loans), United Cash Loans, US FastCash, 500 FastCash, Advantage Cash Services, and Star Cash Processing. The payday lending businesses used the employees of AMG. All the entities were

controlled by Defendant Tucker.

4. In addition to the payday lending entities, Defendant Tucker owned and controlled other entities that were funded primarily through proceeds obtained by payday lending, or other related entities.

5. Defendant W. Brett Chapin was a Certified Public Accountant.  Defendant Chapin was the tax return preparer for Defendant Tucker for tax years 2008, 2009, 2010, and 2011.  Defendants Chapin and Tucker failed to include substantial income from the payday lending businesses in Defendant Tucker's tax returns.

## MATTER AND MEANS

6. Defendant Tucker owned and controlled the lending businesses, but orchestrated a sham transaction to make it appear the businesses were owned by a nominee.

7. At the time he prepared Defendant Tucker's income tax returns, Defendant Chapin was aware Defendant Tucker controlled the payday lending entities despite the sham sale.  For instance, in June and July of 2009, Defendant Chapin used his attorney trust account to make two payments to the Kansas Department of Revenue to pay taxes owed to the State of Kansas for Defendant Tucker and Defendant Tucker's spouse.  The money was deposited from an AMG account.

8. Defendant Tucker used Native American tribes as nominees to operate his payday lending operations.  In 2008 Defendant Tucker allegedly sold CLK Management (which would become AMG) to the Miami Tribe for $120,000.  However, the payment

for the purchase was not made until 2010.

***OVERT ACTS***

    9. The following overt acts were committed in furtherance of the conspiracy:

    A. Defendant Tucker used Nevada shell companies as nominees to operate his payday lending businesses.

    B. In 2008 Defendant Tucker orchestrated a sham sale of CLK to the Miami tribe for $120,000. The sale was a sham in that Defendant Tucker continued to control CLK and the new entity AMG. Defendant Tucker was not paid by AMG until on or about June 29, 2010, when he was paid $135,259.17. Defendant Chapin knew the sale was a sham. On August 3, 2010, an employee in AMG's accounting department emailed Defendant Chapin concerning the payment and asked how the transaction should be reflected in the books of AMG and other companies that Defendant Tucker controlled. Defendant Chapin responded, "Marc do NOT email me or anyone else about CLK." Defendant Chapin then forwarded the email to another person at AMG and stated, "These guys are fricken idiots."

    C. In June and July of 2009, Defendant Chapin made two payments to the Kansas Department of Revenue on behalf of Defendant Tucker. The payments were funded by deposit in Defendant Chapin's account from AMG.

    D. On October 19, 2009, Defendant Tucker's 2008 IRS Form 1040 tax return was filed. The return was prepared by Defendant Chapin and signed by Defendant Tucker. The defendants made false statements in defendant's 2008 IRS form 1040 tax

return by failing to report more than $42,599,036, which was earned from Defendant Tucker's payday lending businesses.

E.   On or about January 6, 2011, Defendant Chapin submitted a letter to the IRS requesting that an audit of Defendant Tucker's tax returns be transferred from Nevada, where the audit was scheduled, to Kansas.   In the letter, Defendant Chpain claimed that Defendant Tucker's records were stored at his office in Shawnee, Kansas.   IRS subsequently transferred the audit to Kansas.

F.   On or about April 4, 2011, Defendant Chapin submitted a letter to the IRS requesting that Defendant Tucker's audit be transferred to Nevada.   In the letter, Defendant Chapin falsely claimed that Defendant Tucker's financial records were in Henderson, Nevada, "and have been for all periods at issue."

G.   On or about April 15, 2011, Defendant Chapin submitted a letter to the IRS stating that documents related to Defendant Tucker's audit were located in Nevada.

H.   On October 20, 2011, Defendant Tucker's 2010 IRS Form 1040 tax return was filed.   The return was prepared by Defendant Chapin and signed by Defendant Tucker.   The tax return was false in that line item 12 failed to include approximately $75,190,191 of income that Defendant Tucker earned from his payday lending businesses.

I.   Counts Two and Three are included as additional overt acts.

10.   This was all in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Filing of False Income Tax Return)

11. On or about October 20, 2011, in the District of Kansas, the defendant

**SCOTT A. TUCKER,**

Unlawfully made and subscribed a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury, and which Scott A. Tucker did not believe to be true and correct as to every material matter.   The return was false and fraudulent to a material matter, in that the return failed to include at least $75,190,191 in income on line 12 or elsewhere of the Form 1040.

12. This was all in violation of Title 26, United States Code, Section 7206(1).

## COUNT THREE
### (Aiding and Assisting in the Preparation and Presentation of a False Income Tax Return)

13. On or about October 20, 2011, in the District of Kansas, the defendant,

**W. BRETT CHAPIN**,

Willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service, of a U.S. Individual Income Tax Return, Form 1040, of Scott A. Tucker, for the calendar year 2010.   The return was false and fraudulent to a material matter, in that the return failed to include at least $75,190,191 in income on line 12 or elsewhere of the Form 1040.

14. This was in violation of Title 26, United States Code, Section 7206(2).

**A TRUE BILL.**

<u>December 20, 2017</u>              <u>s/ Foreman                          </u>
DATE                                                 FOREMAN OF THE GRAND JURY

<u>s/ D. Christopher Oakley, #19248 for </u>
THOMAS E. BEALL
United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS   66101
Ph. 913-551-6730
Fax 913-551-6541
thomas.beall@usdoj.gov
Kan. Sup. Ct. No. 19929

(It is requested that jury trial be held in Kansas City, Kansas.)

**PENALTIES**

Ct. 1: NMT 5 years' imprisonment; NMT $250,000 fine; NMT 3 year supervised release; $ 100 special assessment

Ct. 2: NMT 10 years' imprisonment; NMT $250,000 fine; NMT 3 years' supervised release; $100 special assessment

Ct. 3:   NMT 5 years' imprisonment; NMT $250,000 fine; NMT 1 years' supervised release; $100 special assessment